Your Missouri Courts

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print GrantedPublicAccess Logoff TIMHASKEN1

1822-CC11898 - NICHOLE POLESKI V MALLINCKRODT PLC ET AL (E-CASE)

Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution

This information is provided as a service and is not considered an official court record.

Click here to eFile on Case
Click here to Respond to Selected Documents

Sort Date Entries: Descending / Ascending
Display Options: All Entries

**01/15/2019** **Judge/Clerk - Note**
Copy of petition for Tucker Ellis LLP

**12/28/2018** **Jury Trial Scheduled**
**Scheduled For:** 11/12/2019; 9:00 AM ; REX M BURLISON; City of St. Louis

**12/20/2018** **Judge/Clerk - Note**
THE SUMMONS WERE NOT ISSUED DUE TO A REQUEST TO HOLD SERVICE.

**Filing Info Sheet eFiling**
**Filed By:** JEFFREY J LOWE

**Note to Clerk eFiling**
**Filed By:** JEFFREY J LOWE

**Pet Filed in Circuit Ct**
Petition.
**Filed By:** JEFFREY J LOWE
**On Behalf Of:** NICHOLE POLESKI

**Judge Assigned**

Case.net Version 5.14.0.13 Return to Top of Page Released 09/10/2019

Exhibit A



**1822-CC11898**

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

## MISSOURI CIRCUIT COURT
## TWENTY-SECOND JUDICIAL CIRCUIT
## ST. LOUIS CITY

NICHOLE POLESKI, Individually and
as Surviving Daughter of TAMELA
ROADES, deceased,

      Plaintiff,

  v.

MALLINCKRODT PLC
Serve: CT Corporation
      120 S. Central
      St. Louis,  MO 63105

MALLINCKRODT LLC
Serve: CT Corporation
      120 S. Central
      St. Louis, MO 63105

SPECGX LLC
Serve: CT Corporation
      120 S. Central
      St. Louis, MO 63105

PURDUE PHARMA L.P.
Serve: The Prentice-Hall Corporation
      251 Little Falls Drive
      Wilmington, DE 19808

THE PURDUE FREDERICK
COMPANY
Serve:  The Prentice-Hall Corporation
      251 Little Falls Drive
      Wilmington, DE 19808

TEVA PHARMACEUTICALS USA,
INC.
Serve: Corporate Creations Network
      Inc.
      12747 Olive Blvd., Ste. 300
      St. Louis, MO 63141

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

**JANSSEN PHARMACEUTICALS, INC.**
**Serve: CT Corporation**
      **120 S. Central**
      **St. Louis, MO 63105**

**JOHNSON & JOHNSON**
**Serve: One Johnson & Johnson Plaza**
      **New Brunswick, NJ 08933**

**ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. N/K/A JANSSEN PHARMACEUTICALS, INC.**
**Serve: CT Corporation**
      **120 S. Central**
      **St. Louis, MO 63105**

**JANSSEN PHARMACEUTICA INC. N/K/A JANSSEN PHARMACEUTICALS, INC.,**
**Serve: CT Corporation**
      **120 S. Central**
      **St. Louis, MO 63105**

**NORAMCO, INC.**
**Serve: CT Corporation**
      **120 S. Central**
      **St. Louis, MO 63105**

**ALLERGAN USA**
**Serve: 5 Giralda Farms**
      **Madison, NJ 07940**

**WATSON PHARMACEUTICALS, INC. N/K/A ACTAVIS, INC.**
**Serve: Corporate Creations Network Inc.**
      **12747 Olive Blvd., Ste. 300**
      **St. Louis, MO 63141**

**WATSON LABORATORIES, INC.**
**Serve: Corporate Creations Network Inc.**
      **12747 Olive Blvd., Ste. 300**

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

St. Louis, MO 63141

**ACTAVIS LLC, ACTAVIS PHARMA,
INC. F/K/A WATSON PHARMA, INC.,**
Serve: Corporate Creations Network
    Inc.
    **12747 Olive Blvd., Ste. 300**
    **St. Louis, MO 63141**

**MYLAN PHARMACEUTICALS INC.**
Serve: Corporation Service Company
    **600 N. 2nd St., Ste. 401**
    **Harrisburg, PA 17101**

**MYLAN N.V.**
Serve: Corporation Service Company
    **600 N. 2nd St., Ste. 401**
    **Harrisburg, PA 17101**

**DEPOMED, INC.**
Serve: Arthur J. Higgins
    **7999 Gateway Blvd., Ste. 300**
    **Newark, CA 94560**

**INSYS**
Serve: CT Corporation
    **120 S. Central**
    **St. Louis, MO 63105**

**PHARMA, INC., OPERATING AS
INSYS THERAPEUTICS, INC.**
Serve: CT Corporation
    **120 S. Central**
    **St. Louis, MO 63105**

**JOHN DOES 1-50**
Serve: Hold Service

        **Defendants.**

## <u>PETITION</u>

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

COMES NOW PLAINTIFF Nichole Poleski, Individually and as Surviving Daughter of Tamela Roades, deceased (hereinafter "Plaintiff"), and by and through his attorneys, allege as follows:

### Nature of the Action

1.      Plaintiff brings this action against Defendants Mallinckrodt PLC, Mallinckrodt LLC, SpecGX, LLC, Purdue Pharma, L.P., The Purdue Frederick Company Cephalon, Inc., Teva Pharmaceuticals USA, Inc., Janssen Pharmaceuticals, Inc., Johnson & Johnson, Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica Inc., n/k/a Janssen Pharmaceuticals, Inc., Noramco, Inc., Allergan PLC, f/k/a Actavis PLC, Watson Pharmaceuticals, Inc., n/k/a Actavis, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc., Actavis Pharma, Inc., f/k/a Watson Pharma, Inc., Mylan Pharmaceuticals, Inc., Mylan N.V., DepoMed, Inc., Insys, Pharma, Inc., Operating as Insys Therapeutics, Inc., John Does 1-50 (hereinafter "Defendant Drug Manufacturers") and/or (hereinafter "Physician Defendants") for personal injuries suffered by Decedent Tamela Roades as a direct and proximate result of being prescribed opiate pain-relieving medications, including, but not limited to, Hydrocodone, OxyContin, Oxycodone, and Tramadol (hereinafter "medications"), over an extended period of time.

2.      The medications prescribed and administered to Tamela Roades were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold by Defendants.

3.      Tamela Roades' ingestion of the medications over an extended period of time caused her to develop an addiction to opioids.  These medications have an addiction forming or addiction sustaining quality.  As a result, Tamela Roades was injured and subsequently died from an overdose.

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

## Parties

4.      Plaintiff Nichole Poleski is a citizen and resident of St. Louis, Missouri.  He is the surviving daughter of Decedent Tamela Roades.

5.      Defendant Mallinckrodt PLC is an Irish public limited company.  Mallinckrodt PLC's headquarters are in the United Kingdom. Mallinckrodt LLC is a limited liability company organized and existing under the laws of the State of Delaware and licensed to do business in Missouri. Mallinckrodt LLC's headquarters are in St. Louis, MO.  Consequently, Mallinckrodt LLC is a citizen of the state of Missouri for diversity of jurisdiction purposes.  Mallinckrodt LLC may be served at CT Corporation System, 120 South Central Ave, Saint Louis, MO 63105. Mallinckrodt LLC is a wholly owned subsidiary of Mallinckrodt, PLC.  SpecGX LLC is a limited liability company existing under the laws of the State of Delaware and licensed to do business in Missouri. SpecGx LLC may be served at CT Corporation System, 120 South Central Ave, Saint Louis, MO 63105. SpecGx LLC is a wholly owned subsidiary of Mallinckrodt plc. Mallinckrodt LLC and SpecGx LLC are licensed drug distributors in Missouri and operate distribution centers in Missouri. Mallinckrodt, plc, Mallinckrodt LLC, and SpecGx LLC are referred to collectively as "Mallinckrodt."

6.      Purdue Pharma L.P. is a limited partnership organized under the laws of Delaware.  Purdue Pharma Inc. is a Delaware corporation with its principal place of business in Stamford, Connecticut, and The Purdue Frederick Company, Inc. is a Delaware corporation with its principal place of business in Stamford, Connecticut.

7.      Teva Pharmaceuticals Industries USA, Inc. is a wholly-owned subsidiary of Teva Ltd., an Israeli corporation.  Teva USA is a Delaware corporation with its principal place of business in Pennsylvania.  Teva USA acquired Cephalon in October 2011.  Teva USA can be

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

served at Corporation Creations Network, Inc., 12747 Olive Blvd., Ste. 300, St. Louis, MO 63141.

8.      Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey and is a wholly owned subsidiary of Johnson & Johnson, a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.  Janssen Pharmaceuticals, Inc. was formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc., which in turn was formerly known as Janssen Pharmaceutica, Inc. Defendant Ortho-McNeil-Janssen Pharmaceuticals, Inc., now known as Janssen Pharmaceuticals, Inc., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. Janssen Pharmaceutica, Inc., now known as Janssen Pharmaceuticals, Inc., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey.

9.      Noramco is a Delaware corporation headquartered in Wilmington, Delaware and was a wholly owned subsidiary of Johnson & Johnson until July 2016 when it was sold and was responsible for processing and manufacturing the active ingredients in Johnson & Johnson and Janssen's opioid products and is a manufacturer of opioid products.

10.      DepoMed, Inc. is a California corporation with its principal place of business in Newark, California.  Depomed describes itself as a specialty pharmaceutical company focused on pain and other central nervous system (CNS) conditions.  DepoMed develops, markets, and sells prescription drugs in Missouri and nationally.

11.      Allergan PLC is a public limited company incorporated in Ireland with its principal place of business in Dublin, Ireland.  Actavis PLC acquired Allergan PLC in March 2015, and the combined company changed its name to Allergan PLC in March 2015.  Prior to that, Watson Pharmaceuticals acquired Actavis, Inc. in October 2012; the combined company

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

changed its name to Actavis, Inc. as of January 2013 and then to Actavis plc in October 2013. Watson Laboratories, Inc. is a Nevada corporation with its principal place of business in Corona, California, and is a wholly owned subsidiary of Allergan PLC (f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.).  Actavis Pharma, Inc. (f/k/a Actavis, Inc.) is a Delaware corporation with its principal place of business in New Jersey, and was formerly known as Watson Pharma, Inc. Actavie LLC is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey.  Each of these defendants is owned by Allergan PLC, which uses them to market and sell its drugs in the United States.  Upon information and belief, Allergan PLC exercises control over these marketing and sales efforts, and profits from the sale of Allergan/Actavis products ultimately inure to its benefit.  (Allergan PLC, Actavis PLC, Actavis, Inc., Actavis LLC, Actavis Pharma, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc., and Watson Laboratories, Inc.

12.     Mylan Pharmaceuticals, Inc. is a Dutch corporation headquartered in Canonsburg, Pennsylvania.  Mylan Pharmaceuticals, Inc. is a wholly owned subsidiary of Mylan N.V., a Dutch corporation headquartered in Canonsburg, Pennsylvania.

13.     Insys Pharma, Inc. is a Delaware corporation headquartered in Arizona and operating in Missouri as Insys Therapeutics, Inc.  Insys Pharma, Inc. and Insys Therapeutics, Inc. may be served at CT Corporation System, 120 S. Central Ave., St. Louis, MO 63105.

14.     John Does 1-50.

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

## COUNT I
## MEDICAL MALPRACTICE
## (PHYSICIAN DEFENDANTS)

COMES NOW Plaintiff Nichole Poleski, as surviving daughter of decedent Tamela Roades, by and through undersigned counsel, and for his Medical Malpractice Wrongful Death Petition against Physician Defendants, alleges and states as follows:

15.     Plaintiff adopts and incorporates by reference the above allegations as though fully set forth herein.

16.     During the course of treatment referenced herein, Physician Defendants committed the following acts of negligence and failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession, in that Physician Defendants:

a.      Failed to properly evaluate and diagnose decedent;

b.      Failed to conduct the proper diagnostic tests and exams;

c.      Failed to properly treat decedent, namely her pain;

d.      Failed to recognize the danger of prescribing high quantities of various opiate-based pain-relief medications over a long period of time;

e.      Failed to prescribe or recommend medical treatment other than opioids;

f.      Failed to properly educate and warn decedent of the risk potential of abuse, misuse and addiction with opioids;

g.      Failed to follow known medical guidelines regarding the prescription of opioids.

h.      Prescribed too much opioids or failed to reduce the number of opioids prescribed to decedent, which led to her death;

i.      Failed to pursue available pain control methods which were less dangerous and addictive;

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

j.      Failed to recognize, diagnose, and treat decedent's addiction; and

k.      Failed to properly monitor decedent's drug use.

18.     Physician Defendants' negligence and carelessness as set forth above directly caused, or directly contributed to cause, decedent's addiction to opioids, her pain and suffering, and ultimately her death.

19.     As a direct and proximate result of one, several, or all of the foregoing acts of negligence on the part of Physician Defendants, Plaintiff claims such damages as the trier of fact may deem fair and just for the death and loss of Tamela Roades pursuant to R.S.Mo. §537.080 and §537.090.

WHEREFORE, Plaintiff Nichole Poleski, as surviving daughter of deceased Tamela Roades, requests judgment against Physician Defendants, for a sum in excess of the jurisdictional limits of this Court to fully compensate him and his family for the death and loss of Tamela Roades pursuant to R.S.Mo. §537.080 and §537.090 and for any further just and proper relief.

### COUNT II
### NEGLIGENCE PER SE – ILLEGAL DIVERSION
### (DEFENDANT DRUG MANUFACTURERS)

20.     Plaintiff repeats and reiterates the allegations previously set forth herein.

21.     At all times mentioned herein Defendant Drug Manufacturers were under a duty to exercise due care in the reasonable care in the manufacturing and distribution of their schedule II narcotic product opioids.

22.     Missouri and Federal law mandate that the Defendant Drug Manufacturers implement effective controls and procedures in their supply chains to guard against theft, diversion and the abuse of prescription opioids, and Defendants failed to adequately design and

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

operate  a system to detect, halt and report suspicious orders of prescription opioids. (See MO.

20 CSR 2220-5.060 and USC sect. 801 et seq).

23      That these laws were implemented to protect the population of cities and counties,

and that by failing to report, control, and set up a system of controls, Defendant Drug

Manufacturers harmed the very people the laws were meant to protect.

24.      As a result, Defendant Drug Manufacturers negligently disseminated massive

quantities of prescription opioids available to Decedent.  Defendant Drug Manufacturers' actions

and failure to act transferred legal prescription drugs from lawful to unlawful channel of

distribution or use.

25.      As a result of their failure, Plaintiff has been overwhelmed by the illegal opioid

market, creating an addiction problem leading to death and economic damages of Decedent.

26.      Defendant Drug Manufacturers negligently distributed huge amounts of opioids

into the illegal street market, acting as a supply to illegal drug dealers, allowing these pills to be

illegally trafficked and sold.

27.      The Defendant Drug Manufacturers' actions were a substantial factor in making

opioids widely available and widely used.  The Defendant Drug Manufacturers' actions were a

substantial factor in doctors and patients not accurately assessing and weighing the risks and

benefits of opioids for chronic pain.  Without the Defendant Drug Manufacturers' actions, opioid

use would not have become so widespread, and the enormous public health hazard of opioid

overuse, abuse and addiction that now exists would have been averted.

28.      The Defendant Drug Manufacturers also knowingly, intentionally, recklessly,

and/or negligently funded massive quantities of prescription opioids to physicians and other

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

prescribers who they knew or should have known wrote suspicious prescriptions and/or wrote prescriptions for known abusers of prescription opioids.

29.     The Defendant Drug Manufacturers knowingly, intentionally, recklessly, and/or negligently disseminated prescription opioids to distributors who they knew or should have known failed to implement effective controls and procedures to guard against theft, diversion and abuse of prescription opioids.

30.     The Defendant Drug Manufacturers also knowingly enabled and/or failed to prevent the illegal diversion of prescription opioids into the black market, including "pill mills" known for providing opioids to drug abusers, and known drug dealers, knowing that such opioids would be illegally trafficked and abused.

31.     The Defendant Drug Manufacturers knowingly and intentionally incentivized the PBM Defendants to place their opioids on the PBMs formularies irrespective of medical necessity, resulting in widespread and unnecessary overuse.

32.     As a direct and proximate result of the aforesaid conduct of Defendant Drug Manufacturers, Decedent suffered from physical and mental injuries and death.  The full extent of the destruction caused by the misrepresentations of these schedule II drugs, has not been quantified as of yet because the loss of human lives, resources devoted to administering and trying to save those lives and costs for the dealing with the problem is so deep and far reaching, and as of yet have not been fully identified.  As a direct and proximate result from the aforesaid conduct of Defendant Drug Manufacturers, Decedent became addicted to opioid medicines and died.

WHEREFORE, Plaintiff Nichole Poleski, as surviving daughter of deceased Tamela Roades, requests judgment against Defendant Drug Manufacturers, for a sum in excess of the

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

jurisdictional limits of this Court to fully compensate him and his family for the death and loss of Tamela Roades pursuant to R.S.Mo. §537.080 and §537.090 and for any further just and proper relief.

<div align="center">

**COUNT III**
**NEGLIGENCE**
**(DEFENDANT DRUG MANUFACTURERS)**

</div>

33.     Plaintiff repeats and reiterates the allegations previously set forth herein.

34.     At all times mentioned herein, Defendant Drug Manufacturers were under a duty to exercise reasonable care in advertising, marketing, promotion and labeling of their opioid products to ensure that the use of their products did not result in avoidable injuries.

35.     Decedent's injuries as described herein were caused by the duties under Missouri state and federal law and the breach of Defendant Drug Manufacturers working with one another, in concert with each other, acting within the course and scope of their employment, including among other things.

    a.     Carelessly and negligently researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing, distributing, and marketing their opioid products;

    b.     Failing to fully disclose the results of the testing and other information in its possession regarding the possibility opioids were addictive and subjecting a user to withdrawal symptoms;

    c.     Knew that withdrawal was not easily managed and failed to instruct this;

    d.     That OxyContin was in fact not a 12 hour relief pain pill, and that instructing doctors to up the dosage to reach 12 hours increased the likelihood that a patient would become addicted to the drug, thereby increasing the dangers from higher doses of opioids;

    e.     That opioids had adverse effects and failing to warn that opioids do not increase function, and in fact leads to lesser function in the patient; and

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

36.     At all times mentioned herein mentioned, upon information and belief, the above described culpable conduct by Defendant Drug Manufacturers was a proximate cause of Plaintiff's damages.  Defendant Drug Manufacturers knew or should have known that opioids would have the devastating impact that it has had on the Decedent, and could be dangerous and unsafe for the Decedent and the failure to report diversions and over prescribing would result in this opioid epidemic.

37.     As a direct and proximate result of the aforesaid conduct of Defendant Drug Manufacturers, Decedent suffered damages as set forth Intra.  The full extent of the destruction caused by the misrepresentations of these schedule II drugs quantified as of yet because the loss of human lives, resources devoted to administering and trying to save those lives and costs for the dealing with the problem is so deep and far reaching, and as of yet have not been fully identified.  As a direct and proximate result from the aforesaid conduct of Defendant Drug Manufacturers' conduct, Decedent became addicted to opioid medicines and died.

38.     The forgoing actions of Defendant Drug Manufacturers were done with reckless indifference to Decedent, justifying an award of punitive damages.

WHEREFORE, Plaintiff Nichole Poleski, as surviving daughter of deceased Tamela Roades, requests judgment against Defendant Drug Manufacturers, for a sum in excess of the jurisdictional limits of this Court to fully compensate him and his family for the death and loss of Tamela Roades pursuant to R.S.Mo. §537.080 and §537.090 and for any further just and proper relief.

## COUNT IV
## FRAUD IN THE OMISSION
## (DRUG DEFENDANT DRUG MANUFACTURERS)

39.     Plaintiff repeats and reiterates the allegations previously set forth herein.

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

40.     The Defendant Drug Manufacturers, having undertaken the development, manufacturing, marketing, dispensing, distribution, and promotion of their various opioid products as described herein, owed a duty to provide accurate and complete information regarding these products.

41.     The Defendant Drug Manufacturers through their use of front groups, key opinion leaders (hereinafter "KOLS") and advertising perpetuated to the Decedent and the treating physicians omitted to disclose material facts about the lack of evidence of safety and efficacy for treating chronic pain and the addictiveness of opioids. (See Petition at ¶¶108-129, 135, 141-159, 446-458).

42.     At all times pertinent the Defendant Drug Manufacturers acted within a concert of action in that their deceptive omissions misrepresented the true nature of their opioid products, were done with a common intent and purpose to deceive Decedent and treating physicians and their deceptive omissions were an efficient cause and contributing to the damage of Plaintiff.

43.     Defendant Drug Manufacturers acted together and jointly in their marketing, advertising and distribution by and through the use of KOLS, and bogus front organizations funded by Defendant Drug Manufacturers to perpetuate the following material omissions that were material and which were relied upon by residents and treating physicians:

a.      They omitted that in the use of opioids that sustained exposure would deteriorate the patients function, knowing that long term use would lead to less function;

b.      Concealed the link between long term use and addiction;

c.      Concealed the fact that there were no studies showing that opioids were a safe and effective treatment for chronic pain;

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

d.      Omitted the material fact that withdrawal symptoms for a patient were harsh, debilitating and a problem for most users, and the Defendants never advised of such;

e.      Omitted the fact that opioid use could lead to addiction and possibly death; and

44.     These omissions were material to the Decedent.

45.     The aforementioned omissions were reasonably relied upon by treating physicians and Decedent.

46.     As a direct and proximate result of the aforesaid conduct of Defendant Drug Manufacturers, Decedent suffered injuries including but not limited to severe opioid addiction ultimately leading to death.

47.     As a direct result of Defendant Drug Manufacturers' actions Plaintiff had to expend funds for health, medical examiner costs (autopsies), drug treatment and education, etc.

48.     The forgoing actions of Defendant Drug Manufacturers were done with evil motive or with reckless indifference to Decedent, justifying an award of punitive damages.

49.     Defendant Drug Manufacturers have caused a significant and unreasonable interference with the public health, safety, welfare, peace, comfort and convenience, and ability to be free from disturbance and reasonable apprehension of danger to person or property.

50.     Defendant Drug Manufacturers' conduct in illegally distributing and selling prescription opioids, or causing such opioids to be distributed and sold, where Defendant Drug Manufacturers knew, or reasonably should know, such opioids will be diverted and possessed and/or used illegally.

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

51.     Defendant Drug Manufacturers' actions have been of a continuing nature and have produced a significant effect upon the public's rights, including the public's right to health and safety.

52.     A violation of any rule or law controlling the distribution of a drug of abuse is a public nuisance.

53.     Defendant Drug Manufacturers' distribution of opioids while failing to maintain effective controls against diversion was proscribed by statute and regulation.

54.     Defendant Drug Manufacturers' ongoing conduct produces an ongoing nuisance, as the prescription opioids that they allow and/or cause to be illegally distributed and possessed will be diverted, leading to abuse, addiction, crime, and public health costs.

55.     Because of the continued use and addiction caused by these illegally distributed opioids, the public will continue to fear for its health, safety and welfare, and will be subjected to conduct that creates a disturbance and reasonable apprehension of danger to person and property.

56.     Defendant Drug Manufacturers knew, or reasonably should know, that their conduct will have an ongoing detrimental effect upon the public health, safety and welfare, and the public's ability to be free from disturbance and reasonable apprehension of danger to person and property.

57.     Defendant Drug Manufacturers know, or reasonably should know, that their conduct causes an unreasonable invasion of the public right to health, safety and welfare and the public's ability to be free from disturbance and reasonable apprehension of danger to person and property.

58.     Defendant Drug Manufacturers are aware, and at a bare minimum certainly should have been aware, of the unreasonable interference that their conduct has caused.

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

Defendant Drug Manufacturers are in  the  business  of  manufacturing,  marketing,  selling,  and distributing  prescription  drugs, including opioids, which are specifically known to Defendant Drug Manufacturers to be dangerous under state and federal law.

59.     Defendant Drug Manufacturers' conduct in marketing, distributing, selling and filling prescription opioids which the Defendant Drug Manufacturers knew, or reasonably should know, will likely be diverted for non- legitimate, non-medical use, creates a strong likelihood that these illegal distributions of opioids will cause death and injuries..

60.     It is, or should be, reasonably foreseeable to Defendant Drug Manufacturers that their conduct will cause deaths and injuries, and will otherwise significantly and unreasonably interfere with public health, safety and welfare, and with the public's right to be free from disturbance and reasonable apprehension of danger to person and property.

61.     The prevalence and availability of diverted prescription opioids in the hands of irresponsible persons and persons with criminal purposes not only causes deaths and injuries, but also creates a palpable climate of fear where opioid diversion, abuse, addiction are prevalent and where diverted opioids tend to be used frequently.

62.     Defendant Drug Manufacturers' conduct makes it easier for persons to divert prescription opioids, constituting a dangerous threat to the public.

63.     Defendant Drug Manufacturers' actions were, at the least, a cause or contributing cause in opioids becoming widely available and widely used for non-medical purposes. Because of Defendant Drug Manufacturers' special positions within the closed system of opioid distribution, without Defendant Drug Manufacturers' actions, opioid use would not have become so widespread, and the enormous public health hazard of prescription opioid and heroin overuse, abuse, and addiction that now exists would have been averted.

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

64.     The presence of diverted prescription opioids and the consequence of prescription opioids having been diverted, proximately results in significant costs in order to enforce the law, equip its police force and treat the victims of opioid abuse and addiction.

65.     Stemming the flow of illegally distributed prescription opioids, and abating the nuisance caused by the illegal flow of opioids, will help to alleviate this problem, save lives, prevent injuries.

66.     Defendant Drug Manufacturers' conduct is a direct and proximate cause of deaths and injuries to Decedent, and a significant and unreasonable interference with public health, safety and welfare, and with the public's right to be free from disturbance and reasonable apprehension of danger to person and property.

67.     Defendant Drug Manufacturers' actions created and expanded the abuse of opioids, which are dangerously addictive, and the ensuing associated plague of prescription opioid and heroin addiction.   Defendant Drug Manufacturers knew the dangers to public health and safety that diversion of opioids would create, however, Defendant Drug Manufacturers intentionally and/or unlawfully failed to maintain effective controls against diversion through proper monitoring, reporting and refusal to fill suspicious orders of opioids, which there are obligations to monitor and notify the authority under state and federal law that to the extent everyone agrees it has reached epidemic proportions and killed about 60,000 a year. Defendant Drug Manufacturers intentionally and/or unlawfully distributed opioids or caused opioids to be distributed without reporting or refusing to fill suspicious orders or taking other measures to maintain effective controls against diversion. Defendant Drug Manufacturers intentionally and/or unlawfully continued to ship and failed to halt suspicious orders of opioids, or caused such orders to be shipped. Defendant Drug Manufacturers intentionally and/or unlawfully marketed

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

opioids in manners they knew to be false and misleading. Such actions were inherently dangerous.

68.     Defendant Drug Manufacturers knew the prescription opioids have a high likelihood of being diverted. It was foreseeable to Defendant Drug Manufacturers that where Defendant Drug Manufacturers distributed prescription opioids or caused such opioids to be distributed without maintaining effective controls against diversion, including monitoring, reporting, and refusing shipment of suspicious orders, that the opioids would be diverted, and create an opioid abuse nuisance.

69.     Defendant Drug Manufacturers acted with actual malice because Defendant Drug Manufacturers acted with evil motives or a great probability of causing substantial harm, thereby creating a basis for punitive damages..

70.     Defendant Drug Manufacturers' conduct is ongoing and persistent, and the Plaintiff seeks all damages flowing from Defendant Drug Manufacturers' conduct.

71.     As a direct result of Defendant Drug Manufacturers' conduct, the Plaintiff has suffered actual injury and damages. The Plaintiff here seeks recovery for his own harm.

72.     Plaintiff seeks all legal and equitable relief as allowed by law, including inter alia (compensatory damages) and punitive damages from the Defendant Drug Manufacturers.

73.     Defendant Drug Manufacturers created an absolute nuisance. Defendant Drug Manufacturers' actions created and expanded the abuse of opioids, drugs specifically codified as constituting severely harmful substances.

74.     Defendant Drug Manufacturers' actions is substantial and unreasonable – it has caused and continues to cause significant harm to the community, and the harm inflicted outweighs any offsetting benefit. The staggering rates of opioid and heroin use resulting from the

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

Defendant Drug Manufacturers' abdication of their gate-keeping and diversion prevention duties, and the Defendant Drug Manufacturers' fraudulent marketing activities, have caused harm to the entire community that includes, but is not limited to:

a.   The high rates of use leading to unnecessary opioid abuse, addiction, overdose, injuries, and deaths;

b.   Even children have fallen victim to the opioid epidemic.  Easy access to prescription opioids made opioids a recreational drug of choice among teenagers;

c.   Even infants have been born addicted to opioids due to prenatal exposure, causing severe withdrawal symptoms and lasting developmental impacts;

d.   Defendant Drug Manufacturers' conduct created an abundance of drugs available for criminal use and fueled a new wave of addiction, abuse and injury in violation of its statutes under state and federal law;

e.   Defendant Drug Manufacturers' fraudulent misinformation campaign pushing dangerous drugs resulted in a diverted supply of narcotics to sell, and the ensuing demand of addicts to buy them.  More prescription opioids sold by Defendant Drug Manufacturers led to more addiction, with many addicts turning from prescription opioids to heroin.  People addicted to opioids frequently require increasing levels of opioids, and many turned to heroin as a foreseeable result;

f.   The diversion of opioids into the secondary, criminal market and the increased number of individuals who abuse or are addicted to opioids increased the demands on healthcare services and law enforcement;

WHEREFORE, Plaintiff Nichole Poleski, as surviving daughter of deceased Tamela Roades, requests judgment against Defendant Drug Manufacturers, for a sum in excess of the jurisdictional limits of this Court to fully compensate him and his family for the death and loss of Tamela Roades pursuant to R.S.Mo. §537.080 and §537.090 and for any further just and proper relief.

**COUNT V**
**FRAUD**
**(DEFENDANT DRUG MANUFACTURERS)**

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

75.     Plaintiff repeats and reiterates the allegations previously set forth herein.

76.     At all times pertinent in this petition manufacturing and distributing Defendant Drug Manufacturers acted within a concert of action in that their deceptive and misrepresentative actions were done with a common intent and purpose to deceive and their deception and misrepresentations were an efficient cause contributing to the damages of Plaintiffs.

77.     Defendant Drug Manufacturers acted together and jointly in their marketing, advertising, and distribution by and through the use of KOL's and bogus front organizations funded by Defendant Drug Manufacturers to perpetuate the following false and unfounded benefits and claims of opioids:

a.      That opioids improve function;

b.      By concealing the link between long term use of opioids and addiction;

c.      Misrepresenting that addiction can be managed;

d.      Falsely claiming that withdrawal can easily be managed;

e.      Misrepresenting the greater dangers of higher doses of opioids;

f.      Downplayed the use of NSAIDs and other therapies while downplaying the use of opioids; and

g.      Falsely claiming that OxyContin was a 12 hour pain relief pill.

78.     Defendant Drug Manufacturers having undertaken the manufacturing, marketing, dispensing, distribution and promotion of opioids described herein owed a duty to provide accurate and complete information regarding these products.

79.     Defendant Drug Manufacturers' promotional, marketing, and distribution plan, where they all worked in a concert of action towards the goal of increasing market share of all

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

opioids, was meant to create the image and impression that opioids were the proper use for chronic pain, safe,  non-addictive, and functional by not interfering with daily life.

80.    Through their concert of action, the Defendant Drug Manufacturers working together towards their goal of increased sales of opioids and through pooling their vast resources did fund, direct and guide KOL's and false front groups to tout the false benefits of opioids and downplay the harsh side effects such as addiction and death.

81.    The material disseminated by Defendant Drug Manufacturers through promotional materials, medical journal articles, advertising, both print and media,  testimonials, social media, and KOL's falsely and deceptively misrepresented or omitted a number of material facts regarding the previously stated in this count.

82.    The aforementioned misrepresentations by Defendant Drug Manufacturers, working in concert of action were reasonably relied upon prescribing doctors and patients, which created the damages Plaintiff seeks.

83.    As a direct and proximate result of the aforesaid conduct of Defendant Drug Manufacturers, Decedent suffered physical injuries including but not limited to severe opioid addiction.  As a direct result of Defendant Drug Manufacturers' actions Plaintiff had had to expend funds for health, medical examiner costs, drug treatment and education.

84.    The forgoing actions of Defendant Drug Manufacturers were done with evil motive or with reckless indifference to Decedent, justifying an award of punitive damages.

WHEREFORE, Plaintiff Nichole Poleski, as surviving daughter of deceased Tamela Roades, requests judgment against Defendant Drug Manufacturers, for a sum in excess of the jurisdictional limits of this Court to fully compensate him and his family for the death and loss of

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

Tamela Roades pursuant to R.S.Mo. §537.080 and §537.090 and for any further just and proper relief.

## COUNT VI
## NEGLIGENT MISREPRESENTATION
## (DEFENDANT DRUG MANUFACTURERS)

85.     Plaintiff repeats and reiterates the allegations previously set forth herein.

86.     Defendant Drug Manufacturers made many misrepresentations to doctors, patients, and the public in their advertising which as set forth previously, which is misbranded, misleading and contrary to the label.

87.     Defendant Drug Manufacturers are liable for negligent misrepresentation because they supplied information in the course of their business to a class of persons including Decedent.  Because the speakers referred to in this Petition were employed or supplied by the Defendant Drug Manufacturers, their failure to exercise reasonable care for the information was false.  In particular, it was false regarding the fact that opioids were tested and safe and effective for long term use for chronic pain, that Oxycontin would last 12 hours, that opioids were not addictive but pseudoaddictive, etc.  *See infra.*

88.     The information was intentionally provided by the Defendant Drug Manufacturers through their agents and employees, as well as organizations that they jointly funded to spread misleading information about opioids.

89.     The hearer, being the doctors, the public, and other professionals justifiably relied on the truth of the information.

90.     Due to the hearer's reliance on the information, the hearer suffered a pecuniary loss which caused or contributed to cause the loss by Plaintiff herein.

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

WHEREFORE, Plaintiff Nichole Poleski, as surviving daughter of deceased Tamela Roades, requests judgment against Defendant Drug Manufacturers, for a sum in excess of the jurisdictional limits of this Court to fully compensate him and his family for the death and loss of Tamela Roades pursuant to R.S.Mo. §537.080 and §537.090 and for any further just and proper relief.

## COUNT VII
## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
## (DEFENDANT DRUG MANUFACTURERS)

91.     Plaintiff adopts and incorporates by reference the allegations applicable to all County as though fully set forth herein.

92.     Defendant Drug Manufacturers have employed and used deception in connection with the sale and advertisement of opioid medications in the State of Missouri.

93.     Defendant Drug Manufacturers falsely marketed their misbranded opioid medications to decedent as safe for the treatment of chronic pain.

94.     Defendant Drug Manufacturers act of distributing their products through doctors and pharmacies was itself a deceptive and unfair practice under the MMPA because it carried an inherent promise that the prescriptions were safe for use to treat pain as Defendant manufactures advertised.

95.     Defendant Drug Manufacturers engaged in unfair practices in the marketing and sale of opioid medications to decedent, by concealing, suppressing, or omitting the material fact that prolonged use of opioid medications carries an unreasonably high risk of addiction and death.

96.     Defendant Drug Manufacturers falsely marketed their misbranded prescription opioids to doctors including to decedent's doctors and treatment facilities.

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

97.     As a result of Defendant Drug Manufacturers false, deceptive, and unfair practices, decedent purchased prescription opioid medication relying on the expertise of Defendant Drug Manufacturers and the representations they made to her doctors.

98.     Defendant Drug Manufacturers relied on deception to market and sell opioids to decedent.

99.     Decedent purchased opioids medications from Defendant Drug Manufacturers for personal use.

100.     As a direct and proximate result of Defendant Drug Manufacturers conduct, decedent disbursed significant funds for opioid medications produced, marketed, and sold by Defendant Drug Manufacturers and suffered an ascertainable financial loss.

101.     As a direct and proximate result of Defendant Drug Manufacturers' conduct, decedent became addicted to opioid medications, and died.

WHEREFORE, Plaintiff Nichole Poleski, as surviving daughter of deceased Tamela Roades, prays for judgment against Defendant Drug Manufacturers for a sum in excess of the jurisdictional limits of this Court to fully compensate him and his family for the death and loss of Tamela Roades pursuant to R.S.Mo § 537.080 and § 537.090, and for any further just and proper relief.

## COUNT VIII
## FRAUDULENT MISREPRESENTATION
## (DEFENDANT DRUG MANUFACTURERS)

COMES NOW Plaintiff Nichole Poleski, as surviving daughter of decedent Tamela Roade, by and through undersigned counsel, and for his Wrongful Death Petition against Defendant Drug Manufacturers, alleges and states as follows:

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

102.    Plaintiff adopts and incorporates by reference the allegations applicable to all County as though fully set forth herein.

103.    Defendant Drug Manufacturers have employed and used fraud and fraudulent misrepresentations in connection with the sale and advertisement of opioids in the State of Missouri. Defendant Drug Manufacturers made the following representations in connection with the advertising and sale of opioids:

a.      that opioid drugs are safe;

b.      that the benefits of taking opioid drugs outweigh the risks;

c.      that the risks of taking opioid drugs are minimal;
that the risk of addiction, dependence and or overdose from taking opioid drugs is minimal;

d.      that opioid drugs are appropriate to treat chronic pain;

e.      that opioids are safe for long-term use;

f.      that opioid drugs were safe to be used in an unsupervised manner; and

g.      that opioid drugs were not difficult to stop taking after long-term use.

104.    These representations were material and were known to Defendant Drug Manufacturers to be false and/or Defendant Drug Manufacturers knew that they lacked a reasonable basis for the representations.

105.    Defendant Drug Manufacturers made false representations in connection with the sale of opioids, with the intent and expectation that doctors and consumers would act on the representations and purchase their products.

106.    Decedent was unaware of the truth or falsity of the representations of Defendant Drug Manufacturers, and relied upon Defendant Drug Manufacturers' representations in making

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

her decision to purchase and consume said opioid medicines sold by Defendant Drug Manufacturers.

107.    Decedent had a right to rely upon the representations of Defendant Drug Manufacturers.

108.    As a direct and proximate result of Defendant Drug Manufacturers' conduct, Decedent became addicted to opioid medicines and died.

109.    Prior to her tragic death, decedent paid for opioid medications produced, marketed, and sold by Defendant Drug Manufacturers and sustained injuries.

WHEREFORE, Plaintiff Nichole Poleski, as surviving daughter of deceased Tamela Roades, prays for judgment against Defendant Drug Manufacturers for a sum in excess of the jurisdictional limits of this Court to fully compensate him and his family for the death and loss of Tamela Roades pursuant to R.S.Mo § 537.080 and § 537.090, and for any further just and proper relief.

Electronically Filed - City of St. Louis - December 20, 2018 - 11:50 AM

Respectfully Submitted,

**CAREY DANIS & LOWE**

By: */s/ Jeffrey J. Lowe*
Jeffrey J. Lowe, #35114
John F. Garvey, #35879
Sarah Shoemake Doles, #45747
Alyson M. Petrick, #68323
Attorneys for Plaintiffs
8235 Forsyth Blvd
St. Louis, MO 63105
(314) 725-7700
(314) 721-0905 - Facsimile
jlowe@careydanis.com
jgarvey@careydanis.com
sdoles@careydanis.com
apetrick@careydanis.com



| From: | Amanda Skyrm |
|---|---|
| Sender's Address: | 950 Main Avenue Suite 1100<br>Cleveland, OH |
| Sender's Phone/FAX: | Business Phone: 216.696.2351<br>Business FAX: 216.592.5009 |

| To: | 3146137486 | Sent By: | Amanda Skyrm |
|---|---|---|---|
| FAX #: | 3146137486 | Pages: | 1 |
| Phone: | | Date: | 3:09:29 PM - 1/10/2019 |
| Re: | Copy Request - 1822-CC11898 | | |

**Comments:**

Hello, please also forward a copy of the complaint in case no. 1822-CC11898 (Poleski v. Mallinckrodt, et al.) to me. Thank you! Tucker Ellis LLP c/o Amanda Skyrm 950 Main Ave, Suite 1100 Cleveland, Ohio 44113

**CONFIDENTIALITY NOTICE**

The information in this fax transmission and the documents accompanying it contain confidential information belonging to the sender which is legally privileged.
The information is intended only for the use of the individuals or entities named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this faxed information is strictly prohibited.
If you have received this fax in error, please immediately notify us by telephone to arrange for return of the original documents to us.

file://cle-fax02/Omtool/Messages/01dc/6e2e6ae3-64d8-49c5-aada-958f428da22b-TEW_C...    1/10/2019